IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHOULDER INNOVATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 24-266-JPM |
| v. | ) | |
| | ) | |
| CATALYST ORTHOSCIENCE INC., | ) | |
| | ) | |
| Defendant. | ) | |

**SHOULDER INNOVATIONS, INC.'S OPENING BRIEF IN SUPPORT OF ITS RENEWED MOTION TO DISMISS CATALYST ORTHOSCIENCE INC.'S COUNTERCLAIMS 6-8 UNDER FED. R. CIV. P. 12(b)(6) OR, IN THE ALTERNATIVE, TO STAY COUNTERCLAIMS 6-8**

OF COUNSEL:
Jon W. Gurka
CROWELL & MORING LLP
3 Park Plaza, Suite 20
Irvine, CA 92614
(949) 798-1331

Andrew McElligott
Ryan Fitzgerald
CROWELL & MORING LLP
455 N. Cityfront Plaza Drive
Chicago, IL 60611
(312) 321-4200

Dated: September 12, 2024

Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiff Shoulder Innovations, Inc.*

# TABLE OF CONTENTS


**Page**

I. NATURE AND STAGE OF PROCEEDING ........................................................1

II. PRELIMINARY STATEMENT ........................................................1

III. SUMMARY OF ARGUMENT ........................................................2

IV. STATEMENT OF FACTS ........................................................3

V. LEGAL STANDARD........................................................5

VI. CATALYST'S COUNTERCLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR RELIEF THAT IS PLAUSIBLE ON ITS FACE........................................................6

A. Catalyst Fails to State a Claim for Relief in Its Sixth Counterclaim ....................6

B. Catalyst's Seventh and Eighth Counterclaims Are Precluded by the *Noerr-Pennington* Doctrine ........................................................7

1. Catalyst Cannot Establish That Shoulder's Infringement Claims Are Objectively Baseless........................................................9

C. Catalyst's Seventh Claim for Tortious Interference Should Be Dismissed as Legally Insufficient and Factually Unsupported..........................12

1. Catalyst's Factually Unsupported and Conclusory Allegation Regarding One "Third Party" Relationship Does Not Give Rise to a Plausible Claim ........................................................12

2. Conclusory Allegations of the Loss of the Nebulous and Generalized Class of "Customers" Also Does Not Give Rise to a Plausible Claim ........................................................15

D. Catalyst's Eighth Claim for Abuse of Process Should Be Dismissed as Factually Unsupported and Insufficiently Plead ...........................................16

1. Shoulder's Alleged Communications with Third Parties Do Not Support an Abuse of Process Claim...............................................16

2. Shoulder's Maintenance of Suit Following Catalyst's PGR Petition Does Not Support an Abuse of Process Claim..........................17

3. Shoulder's May 21, 2024 Letter Served No Improper Purpose, and Does Not Support an Abuse of Process Claim..................18

VII. ALTERNATIVELY, CATALYST'S COUNTERCLAIMS 6-8 SHOULD BE BIFURCATED AND STAYED........................................................19

VIII. CONCLUSION........................................................20

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*AccuSoft Corp. v. Palo*,
237 F.3d 31 (Fed. Cir. 2001)....................20

*Akzona Inc. v. E.I. Du Pont de Nemours & Co.*,
607 F. Supp. 227 (D. Del. 1984)....................20

*Argus Chem. Corp. v. Fibre Glass-Evercoat Co.*,
812 F.2d 1381 (Fed. Cir. 1987)....................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................5, 6, 17

*AstraZeneca AB v. Glenmark Generics Ltd.*,
No. 14-665-GMS, 2014 WL 5366050 (D. Del. Oct. 9, 2014)....................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................6, 12, 13

*Biomeme, Inc. v. McAnallen*,
No. N19C-12-079, 2021 WL 5411094 (Del. Super. Ct. Nov. 10, 2021)....................13

*Braintree Labs., Inc. v. Schwarz Pharma, Inc.*,
568 F. Supp. 2d 487 (D. Del. 2008)....................7, 18

*City of Newark v. Delmarva Power & Light Co.*,
497 F. Supp. 323 (D. Del. 1980)....................8

*Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*,
749 F.2d 154 (3d Cir. 1984)....................7

*Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*,
546 F. Supp. 3d 204 (W.D.N.Y. 2021)....................15

*CrewFacilities.com, LLC v. HotelEngine, Inc.*,
No. 20-1637-RGA, 2021 WL 2649758 (D. Del. June 28, 2021)....................16

*DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*,
No. 23-675-WCB, 2024 WL 639991 (D. Del. Feb. 15, 2024)....................20

*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961)....................7

*Eagle Pharms., Inc. v. Eli Lilly Co.*,
No. 18-1121-MSG, 2018 WL 6201704 (D. Del. Nov. 27, 2018)....................20

*Ervin Equip. Inc. v. Wabash Nat'l Corp.*,
No. 15-104, 2017 WL 416304 (N.D. Ind. Jan. 31, 2017) ....................................................6

*Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*,
362 F.3d 1367 (Fed. Cir. 2004)....................................................................................7, 8

*Godo Kaisha IP Bridge 1 v. TCL Commc'ns. Tech. Holdings Ltd.*,
No. 15-634-SLR, 2017 WL 750700 (D. Del. Feb. 27, 2017) ..............................................5

*Guirguis v. Movers Specialty Servs., Inc.*,
346 F. App'x 774 (3d Cir. 2009) ..................................................................................6, 13

*Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*,
806 F.3d 162 (3d Cir. 2015)..........................................................................................7, 9

*In re Innotron Diagnostics*,
800 F.2d 1077 (Fed. Cir. 1986).......................................................................................20

*Kimbleton v. White*,
No. 12-974-GMS, 2014 WL 4386760 (D. Del. Sept. 4, 2014)...........................................15

*Korotki v. Hiller & Arban, LLC*,
No. N15C-07-164, 2016 WL 3637382 (Del. Super. Ct. July 1, 2016) ...............................18

*Levey v. Brownstone Inv. Grp., LLC*,
590 F. App'x 132 (3d Cir. 2014) ........................................................................................6

*Malpiede v. Townson*,
780 A.2d 1075 (Del. 2001) ........................................................................................12, 15

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
165 F.3d 891 (Fed. Cir. 1998)..........................................................................................17

*MMS Trading Co. Pty. v. Hutton Toys, LLC*,
No. 20-1360, 2021 WL 1193947 (E.D.N.Y. Mar. 29, 2021)........................................14, 15

*Mobile Pixels, Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*,
No. 23-12587, 2024 WL 3458189 (D. Mass. July 18, 2024) ..............................................9

*Organovo Holdings, Inc. v. Dimitrov*,
162 A.3d 102 (Del. Ch. 2017)...........................................................................................15

*Orthopaedic Assocs. of S. Del., P.A. v. Pfaff*,
No. S17-C-07-016, 2018 WL 822020 (Del. Super. Ct. Feb. 9, 2018) ................................13

*Orthophoenix, LLC v. Dfine, Inc.*,
No. 13-1003-LPS, 2015 WL 1938702 (D. Del. Apr. 28, 2015) .........................................20

*Pfeiffer v. State Farm Mut. Auto. Ins. Co.*,
No. N10A-12-006, 2011 WL 7062498 (Del. Super. Ct. Dec. 20, 2011)....16, 19

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
508 U.S. 49 (1993)....7, 8, 20

*Rwanda Social Sec. Bd. v. LEAF Pharmas., LLC*,
No. 2022-0987, 2023 WL 8520313 (Del. Ch. Dec. 8, 2023)....13, 14, 16, 17

*Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*,
113 F.3d 405 (3d Cir. 1997)....6

*Soterion Corp. v. Soteria Mezzanine Corp.*,
No. 6158-VCN, 2012 WL 5378251 (Del. Ch. Oct. 31, 2012)....13

*SSI Techs., LLC v. Dongguan Zhengyang Elec. Mech. Ltd.*,
59 F.4th 1328 (Fed. Cir. 2023)....7

*UCP Int'l Co. v. Balsam Brands Inc.*,
420 F. Supp. 3d 966 (N.D. Cal. 2019)....8

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Novartis Pharm. Corp.*,
No. 15-12732, 2017 WL 2837002 (D. Mass. June 30, 2017)....10, 11

*Wilco Ag. v. Packaging Techs. & Inspection LLC*,
615 F. Supp. 2d 320 (D. Del. 2009)....17

**Statutes**

35 U.S.C. § 154(d)....3, 5, 18

35 U.S.C. § 282....10, 18

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| 1 | Declaration of Jon W. Gurka in Support of Shoulder Innovations, Inc.'s Opening Brief in Support of Motion to Dismiss and, in the Alternative, to Stay |

## I. NATURE AND STAGE OF PROCEEDING

Shoulder Innovations, Inc. ("Shoulder" or "SI") sued Catalyst OrthoScience Inc. ("Catalyst") for infringement of Shoulder's U.S. Patent No. 11,771,561 ("the '561 Patent"). D.I. 1. Upon issuance of Shoulder's new patent, U.S. Patent No. 12,023,254 ("the '254 Patent"), Shoulder amended its complaint to add infringement of the '254 Patent. D.I. 37, 39. In response to the Amended Complaint, Catalyst asserted new counterclaims for sham litigation, tortious interference with prospective economic advantage, and abuse of process (Sixth, Seventh, and Eighth Claim for Relief, respectively). D.I. 44. Shoulder moved to dismiss these factually unsupported and implausible counterclaims. D.I. 53, 54. With no legitimate basis to oppose, Catalyst amended its counterclaims. D.I. 59. Despite a second chance, Catalyst's amended counterclaims 6-8 remain factually unsupported and legally implausible, forcing Shoulder again to move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. PRELIMINARY STATEMENT

Shoulder brought this lawsuit to end Catalyst's willful infringement of Shoulder's patents. In enforcing its rights, both pre- and post-filing, Shoulder has consistently taken a careful and measured approach. Knowing that it cannot defend against Shoulder's strong infringement case, Catalyst seeks to change the narrative by raising a host of new, unsupported and sensationalized counterclaims that seek to unfairly punish Shoulder for the good faith assertion of its patent rights.

Tellingly, Catalyst never raised its sham litigation, tortious interference, and abuse of process counterclaims in response to Shoulder's original complaint. Nor did Catalyst move to dismiss Shoulder's original complaint, or even its amended complaint. Catalyst's delay in raising its unsupported counterclaims demonstrates their impropriety. Further, Catalyst's "objectively baseless" arguments are pure fiction. Its assertion that Shoulder's infringement case relies on an "objectively baseless" claim construction is belied by the fact that Catalyst does not seek a

construction of any term in Shoulder's two asserted patents, and that its post-grant review (PGR) petition relies on the same construction Catalyst contends is "objectively baseless." Additionally, Catalyst's assertion that Shoulder "knows" its asserted claims are invalid runs contrary to the law, as Shoulder's patents are entitled to a presumption of validity.

In a patent case such as this one, "it is important to keep an eye on the ball, which is that we need a prompt and correct and thoughtful resolution." D.I. 48 at 7:14-8:2. Shoulder accordingly moves to dismiss Catalyst's new counterclaims 6-8 to dispose of Catalyst's improper attempt to obtain litigation leverage and needlessly expand this case well beyond what it is—a typical patent infringement case between competitors.

## III. SUMMARY OF ARGUMENT

1. Catalyst's new counterclaims are premised on misunderstandings of the law. Sham litigation is not a standalone claim, but rather an exception to the *Noerr-Pennington* doctrine. Catalyst's standalone sham litigation claim is thus fundamentally flawed. Similarly, Catalyst's tortious interference and abuse of process claims are preempted by federal patent law, and precluded by the *Noerr-Pennington* doctrine. Catalyst's counterclaims 6-8, thus, fail to state a claim upon which relief can be granted under Rule 12(b)(6).

2. Catalyst's tortious interference and abuse of process claims are also legally insufficient and factually unsupported, failing to meet the required *Twombly*/*Iqbal* standard. The tortious interference claim rests on a single allegation that an unidentified "third party" would have provided funding or investment but for Shoulder's suit; but, with no supporting facts, such a conclusory allegation fails to give rise to a plausible claim. Further, Shoulder did not have any knowledge of this "third party," and it was *Catalyst* who informed its investors of Shoulder's infringement claims, rendering Catalyst's tortious interference claim legally insufficient. Likewise, Catalyst's abuse of process claim runs afoul of the fundamental tenet of patent law that

an issued patent is presumed valid until proven otherwise by clear and convincing evidence. Implausible on their face, Catalyst's counterclaims fail to state a claim upon which relief can be granted under Rule 12(b)(6).

3. Alternatively, if the Court finds that Catalyst's counterclaims state a plausible claim for relief, they should be bifurcated and stayed pending resolution of the underlying patent issues. This standard Delaware practice avoids burdening the parties and Court with needless discovery, motion practice, and a trial on issues more easily decided after resolving the patent disputes.

## IV. STATEMENT OF FACTS

Shoulder protects its innovative solutions for shoulder arthroplasty with several patents issued by the U.S. Patent Office ("PTO"), two of which are the subject of the present litigation. D.I. 39-1, 39-2. In November 2022, Shoulder filed U.S. Patent Application No. 18/058,058 ("the '058 Application"), later issuing as the '561 Patent, directed to its innovative reverse shoulder arthroplasty system. D.I. 39-1 at 2. The '058 Application published within a few months of filing on March 23, 2023. *Id.* Within weeks of publishing, the PTO notified Shoulder that the pending claims of the '058 Application had been allowed. *See* D.I. 59-1.

Shoulder became aware that Catalyst's R1 Reverse Shoulder System was covered by the '058 Application's allowed claims. *Id.* In accordance with its provisional rights under 35 U.S.C. § 154(d), Shoulder wrote Catalyst on May 4, 2023 providing notice that the '058 Application "directly relates to Catalyst's R1 System and the R1 System appears to infringe the Allowed Patent's claims." *Id.* With its letter, Shoulder included a copy of the published '058 Application, and a copy of the allowed claims. *Id.*

Approximately two weeks later, on May 19, 2023, Catalyst responded asserting that the '058 Application's claims were allowed "in spite of the existence of prior art devices," identifying seven references it contended were relevant prior art. Ex. 1, at Ex. A (May 19, 2023 Laurence Ltr.

to Gurka). Because the ’058 Application had not yet issued, and out of an abundance of caution, Shoulder disclosed Catalyst’s identified references to the PTO on May 25, 2023 for consideration in the ’058 Application. *See* D.I. 59-2. Soon after, the PTO confirmed (without requiring any amendments) that the ’058 Application claims were patentable over the references identified by Catalyst. *Id*. On July 21, 2023, the PTO issued another notice of allowance after searching for, and considering, additional references.

On July 21, 2023, Shoulder sent Catalyst a letter, stating that the PTO “maintained the allowability of the Application’s allowed claims without requiring further amendment.” *Id*. While Shoulder believed at that time that the ’058 Application was set to issue as U.S. Patent No. 11,672,669 based on the PTO’s May 24, 2023 correspondence that stated as much, the PTO notified Shoulder months later, on September 13, 2023, that the ’058 Application would actually issue as U.S. Patent No. 11,771,561. The only notable difference between the two is the References Cited section. *Compare* D.I. 39-1 at 2-3 (U.S. Patent No. 11,771,561: References Cited including: U.S. Patent Nos. 8,177,786; 8,870,962; 11,259,931; U.S. Patent Pub. Nos. 2014/0277520; 2018/0243102; and two foreign references) *with* D.I. 59-2 (U.S. Patent No. 11,672,669: References Cited omitting these references).

After additional correspondence between the parties, Shoulder filed this action asserting infringement of the ’561 Patent. D.I. 1. Initially, Catalyst responded by asserting standard counterclaims for a patent infringement suit—declaratory judgment of invalidity and noninfringement—along with asserting its own infringement claim. D.I. 13. Shortly thereafter, on May 15, 2024, the PTO notified Shoulder that a continuation of the ’561 Patent had been allowed. *See* D.I. 59-4. These newly allowed claims also covered Catalyst’s accused R1 Reverse Shoulder System. *Id.* As a courtesy, and to begin preparing for the addition of another patent to

the case, Shoulder sent Catalyst a letter providing notice of the newly allowed patent with a copy of the notice of allowance and the allowed claims, and alerted Catalyst of Shoulder's intent to add the patent to the present litigation upon its issuance. *Id.* Shoulder also provided Catalyst notice that "to the extent that the Allowed Patent publishes prior to its issuance date, Shoulder intends to seek a reasonable royalty . . . pursuant to 35 U.S.C. § 154(d) from the time of publication through the issuance date," precisely the terms of relief permitted under 35 U.S.C. § 154(d). *Id.*

Upon issuance of the '254 Patent, Shoulder inquired whether Catalyst would oppose the addition of it to the present litigation. *See* D.I. 59-6. Catalyst did not oppose. *Id.* In response to Shoulder's routine addition of the '254 Patent, Catalyst asserted new counterclaims of sham litigation, tortious interference with prospective economic advantage, and abuse of process, premised almost exclusively on Shoulder's activity prior to its February 2024 complaint—all allegations Catalyst could have set forth in its original answer, but did not. Because Catalyst's counterclaims were factually unsupported and legally implausible, Shoulder moved to dismiss them. D.I. 53, 54. With no basis to oppose, Catalyst amended in a desperate attempt to save its baseless counterclaims. D.I. 59. But, despite its second bite at the apple, Catalyst's counterclaims remain factually and legally deficient, forcing Shoulder to once again move to dismiss them.

## V. LEGAL STANDARD

"[C]ourts use the same standard in ruling on a motion to dismiss a counterclaim under Rule 12(b)(6) as they do in assessing a claim in a complaint." *Godo Kaisha IP Bridge 1 v. TCL Commc'ns. Tech. Holdings Ltd.*, No. 15-634-SLR, 2017 WL 750700, at *2 (D. Del. Feb. 27, 2017) (alteration in original) (citation omitted). In determining whether dismissal is appropriate, courts must (1) "identify the elements of the claim"; (2) "identify and reject conclusory allegations"; and (3) evaluate the "well-pleaded factual allegations" and "determine whether they are sufficiently alleged to state a claim for relief." *Id.* at *3 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675-78 (2009)).

Legal conclusions receive no deference, and the court may reject any "legal conclusion[s] couched as a factual allegation." *Guirguis v. Movers Specialty Servs., Inc.*, 346 F. App'x 774, 776 (3d Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Courts are "'not compelled to accept' as true 'unsupported conclusions and unwarranted inferences'" *Levey v. Brownstone Inv. Grp., LLC*, 590 F. App'x 132, 135 (3d Cir. 2014) (citation omitted); *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997).

To survive a motion to dismiss, Catalyst must plead and prove a plausible basis for each element of its claims. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555-56). A plausible claim for relief "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Catalyst must "nudge[] their claims across the line from conceivable to plausible, [else] their complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal quotations and citation omitted).

## VI. CATALYST'S COUNTERCLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR RELIEF THAT IS PLAUSIBLE ON ITS FACE

### A. Catalyst Fails to State a Claim for Relief in Its Sixth Counterclaim

As its Sixth Claim for Relief, Catalyst alleges that Shoulder's lawsuit against Catalyst constitutes a sham litigation. D.I. 59 at 22, ¶¶ 98-101. However, "sham litigation" is not a standalone claim, but rather an exception to the *Noerr-Pennington* doctrine. *See AstraZeneca AB v. Glenmark Generics Ltd.*, No. 14-665-GMS, 2014 WL 5366050, at *1 n.1 (D. Del. Oct. 9, 2014); *Ervin Equip. Inc. v. Wabash Nat'l Corp.*, No. 15-104, 2017 WL 416304, at *2 (N.D. Ind. Jan. 31,

2017). That doctrine "provides broad immunity from liability to those who petition the government, including administrative agencies and courts, for redress of their grievances." *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162, 178 (3d Cir. 2015). "Proof of a sham merely deprives the defendant of immunity; it does not relieve [Catalyst] of the obligation to establish all other elements of [a substantive] claim." *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 61 (1993). Catalyst fails to plead any additional elements of any substantive claim in its Sixth Claim for Relief, so the claim must be dismissed.

### B. Catalyst's Seventh and Eighth Counterclaims Are Precluded by the *Noerr-Pennington* Doctrine

When a party brings a state-law tort claim that arises out of "a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation," the Federal Circuit has held that "federal patent law preempts state-law tort liability." *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004); *see also Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 161 (3d Cir. 1984) ("[A] good faith attempt to enforce a copyright does not violate the antitrust laws."). A party's use of "the courts to protect their business or economic interests from competitors" is protected by the *Noerr-Pennington* doctrine. *Redd Horne, Inc.*, 749 F.2d at 161; *see also E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136-38 (1961). "Although originally developed in the antitrust context, courts have applied this doctrine universally to business torts." *Braintree Labs., Inc. v. Schwarz Pharma, Inc.*, 568 F. Supp. 2d 487, 494-95 (D. Del. 2008) (collecting cases).

The Federal Circuit has held that such protected activity includes not only the filing of lawsuits, but also pre-litigation communications regarding patent infringement and post-litigation communications to customers of an accused infringer, advising them of the lawsuit. *Globetrotter*, 362 F.3d at 1374; *SSI Techs., LLC v. Dongguan Zhengyang Elec. Mech. Ltd.*, 59 F.4th 1328, 1337-

38 (Fed. Cir. 2023); *see also UCP Int'l Co. v. Balsam Brands Inc.*, 420 F. Supp. 3d 966, 983-84 (N.D. Cal. 2019) (Because courts "must give adequate breathing space to the right of petition," companies' notification to "customers about a lawsuit and their intent to pursue legal rights, . . . are protected," even if "additional reasons motivated [those] statements—including a desire to promote sales." (internal quotations and citations omitted)). As the only activities alleged in support of Catalyst's state-law tort claims are Shoulder's filing of the litigation (D.I. 59 at 9 and 14, ¶¶ 26-27, 48), Shoulder's letters to Catalyst regarding potential infringement (*id.* at 7-10, ¶¶ 16-24, 29-30), and Shoulder's alleged communications to third parties regarding the lawsuit (*id.* at 15, ¶ 49), Catalyst's state-law tort claims in its Seventh and Eighth Counterclaim are preempted by federal patent law and precluded by the *Noerr-Pennington* doctrine.

To overcome *Noerr-Pennington* immunity and assert its state-law tort claims, Catalyst must first present a facially plausible claim that Shoulder "has engaged in wrongful conduct by asserting claims of patent infringement" and establish "that the claims of infringement were objectively baseless." *Globetrotter*, 362 F.3d at 1377; *Pro. Real Est. Invs.*, 508 U.S. at 60. Catalyst will presumably rely on its conclusory "sham litigation" allegations from its Sixth Counterclaim to challenge *Noerr-Pennington* immunity, but those allegations do not suffice.

To establish that Shoulder's infringement suit is objectively baseless, Catalyst must plausibly allege that "no reasonable litigant could realistically expect success on the merits." *Pro. Real Est. Invs.*, 508 U.S. at 60. Put differently, Catalyst must establish that the "challenged litigation is objectively meritless" and "disprove the challenged lawsuit's legal viability." *Id.* at 60-61. "Unspecific, conclusory allegations of 'sham' conduct" will not suffice. *City of Newark v. Delmarva Power & Light Co.*, 497 F. Supp. 323, 327 (D. Del. 1980). Catalyst's allegations are

insufficient to establish the narrow exception to *Noerr-Pennington* immunity and overcome the "heavy thumb on the scale in favor of [Shoulder]." *Hanover 3201 Realty*, 806 F.3d at 180.

**1. Catalyst Cannot Establish That Shoulder's Infringement Claims Are Objectively Baseless**

Catalyst does not present any facts from which the Court can draw a reasonable inference that Shoulder's patent infringement claims are meritless or not legally viable. Instead, Catalyst simply points to common elements of any patent infringement case (i.e., invalidity arguments and a claim construction position) and asserts without any factual support that these elements somehow render Shoulder's case meritless. They do not. Catalyst did not originally assert a counterclaim for sham litigation, because Catalyst recognized that Shoulder had a viable basis to bring suit. *See* D.I. 13 at 5-9. The merits of Shoulder's case remain unchanged, and Catalyst pretending otherwise is simply an attempt to unnecessarily expand the case and manufacture leverage.

Catalyst's actions in this case undermine its empty words. For example, if Shoulder's case was not legally viable, Catalyst could have moved to dismiss it. It did not—choosing to twice now answer Shoulder's Complaint. *See Mobile Pixels, Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 23-12587, 2024 WL 3458189, at *9 n.10 (D. Mass. July 18, 2024) (finding that "Counterclaim Plaintiffs' decision to answer the Complaint, . . . undermines the likelihood of a finding that the infringement allegations in the Complaint are objectively baseless"). Catalyst also could have raised a sham litigation claim in its first set of counterclaims. Again, it did not. When Shoulder sought to add the '254 Patent to the litigation, Catalyst could have then opposed. Again, it did not. *See* D.I. 59-6. If, as Catalyst alleges, an "objectively baseless" claim construction is necessary for Shoulder to prove infringement (D.I. 59 at 14, ¶ 47), Catalyst also could have brought this issue to a head, raising the term now for claim construction. Again, Catalyst has not. D.I. 62. Catalyst's actions speak volumes.

**a. Catalyst's Own Invalidity Allegations Cannot Support Its "Objectively Baseless" Claim**

Catalyst cannot rely on its own non-instituted invalidity arguments (D.I. 59 at 14, ¶ 48) to support its claim that Shoulder's patent infringement suit is a "sham" and not legally viable. "The allegation by an accused infringer that the patent is invalid—an assertion frequently made by those charged with infringement—cannot be turned into evidence that the patentee knew the patent was invalid when it instituted an infringement suit." *Argus Chem. Corp. v. Fibre Glass-Evercoat Co.*, 812 F.2d 1381, 1386 (Fed. Cir. 1987). Further, even if Catalyst's invalidity arguments were plausible (they are not), "a merely plausible patent invalidity claim is not enough to support a plausible sham litigation claim." *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Novartis Pharm. Corp.*, No. 15-12732, 2017 WL 2837002, at *11 (D. Mass. June 30, 2017). Moreover, the validity of Shoulder's '561 Patent has already been twice confirmed by the PTO—once when the PTO initially allowed the '058 Application claims, and again when the PTO confirmed patentability over the alleged prior art ***identified by Catalyst***. *See* D.I. 59-1, 59-2. Accordingly, Catalyst has failed to plead sufficient facts from which the Court can reasonably infer that Shoulder knew its statutorily valid patents were, in fact, invalid when it brought suit. *See* 35 U.S.C. § 282 ("A patent shall be presumed valid."). To find otherwise would invite "sham litigation" claims in all future patent suits whenever an infringer raises an invalidity argument.

**b. Catalyst's PGR And Claim Construction Positions Directly Contradict Its "Objectively Baseless" Claim**

Aside from its own invalidity arguments, Catalyst relies on a single claim construction position as the basis for why Shoulder's infringement claims are not legally viable. But the Court cannot reasonably infer that Shoulder's claims or construction are "objectively baseless" when Catalyst advanced the very same construction in its PGR petition and chose to forego presenting the term for construction in this case.

Catalyst disputes the meaning of the following limitation: "a glenosphere, having a lateral, convex articular side, a medial side, and a central channel extending from the convex articular side to the medial side and configured to interface with the baseplate" (hereinafter the "interface" limitation). Shoulder contends that the claimed "glenosphere" is what must be "configured to interface with the baseplate," and not necessarily the "central channel" of the glenosphere as Catalyst argues. D.I. 59 at 14, ¶ 47. Shoulder's position is, in fact, entirely consistent with and supported by Catalyst's own understanding of the term as presented in its PGR petition, where Catalyst argues that the Orphanos reference discloses the "interface" limitation because it discloses that that ***"[e]ach glenosphere*** 250, 1030 [in Orphanos] ***is configured to*** surround and ***interface with baseplate*** 312, 1010 via a taper lock of the distal facing surface of the glenosphere 250, 1030 and the proximal facing surface of the baseplate 210 (as highlighted by the red ovals in Figures 3 and 10B above)." D.I. 59-5 at 53-54. Catalyst cannot plausibly allege, and the Court cannot reasonably infer, that Shoulder's claim construction is "objectively baseless" when ***Catalyst*** relied on and advanced that same claim interpretation in its PGR petition, an interpretation also supported by Catalyst's own alleged expert. *Id.* at 54 ("Fallin Decl., ¶ 105, EX-1002 at 51-52.").

Further, recognizing that a ***single*** claim construction dispute cannot render Shoulder's ***entire*** infringement case "objectively baseless," Catalyst asserts that "[w]ithout this objectively baseless construction, SI knows that it cannot even allege that Catalyst has infringed claims of either the '561 or '254 Patents. SI's entire infringement suit is therefore objectively baseless." D.I. 59 at 14, ¶ 47. This conclusory statement is wholly unsupported. Catalyst fails to explain why Shoulder could not prove infringement under Catalyst's construction or an alternative one. Moreover, Catalyst has not even proposed the "interface" limitation for construction in this case, undermining its claim that a singular claim construction dispute renders Shoulder's case

"objectively baseless." *See* D.I. 62. If Shoulder's infringement claims lacked merit (or if Catalyst's "sham litigation" claim actually had merit), Catalyst would have proposed the term for construction to directly address the issue. Tellingly, it did not.

In view of the foregoing, Catalyst has failed to plead a plausible claim that Shoulder's lawsuit is objectively baseless and that the "sham" exception should therefore apply. Catalyst misses the mark in "nudg[ing] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Catalyst has not distinguished the merits of Shoulder's lawsuit from any other patent infringement suit, and simply referring to invalidity arguments and one claim construction position, which Catalyst itself relied upon in its PGR petition, does not move the needle. As Catalyst has not adequately pled an exception to the *Noerr-Pennington* doctrine, its Seventh and Eighth Counterclaims should be dismissed.

### C. Catalyst's Seventh Claim for Tortious Interference Should Be Dismissed as Legally Insufficient and Factually Unsupported

Even if the Court finds that Catalyst's Seventh Claim for Relief of tortious interference with prospective economic advantage (D.I. 59 at 23, ¶¶ 102-105), is not barred under the *Noerr-Pennington* doctrine, the counterclaim should still be dismissed as legally and factually unsupported. Catalyst fails to plausibly plead, as it must, "(a) the reasonable probability of a business opportunity, (b) the intentional interference by [Shoulder] with that opportunity, (c) proximate causation, and (d) damages." *Malpiede v. Townson*, 780 A.2d 1075, 1099 (Del. 2001) (internal quotations and citation omitted).

#### 1. Catalyst's Factually Unsupported and Conclusory Allegation Regarding One "Third Party" Relationship Does Not Give Rise to a Plausible Claim

Catalyst's only allegation regarding lost business opportunities is that an unidentified "third party" "would have provided funding or investment to Catalyst had SI not asserted its patent

infringement claims against Catalyst." D.I. 59 at 17, ¶ 59. But such a conclusory allegation fails to plausibly allege each of the elements required for a viable tortious interference claim.

First, Catalyst fails to plausibly allege that this unidentified business relationship was reasonably probable, setting forth no facts indicating the reality of such a potential funding or investment sufficient to "infer the existence" of such a relationship. *Orthopaedic Assocs. of S. Del., P.A. v. Pfaff*, No. S17-C-07-016, 2018 WL 822020, at * 3 (Del. Super. Ct. Feb. 9, 2018). Catalyst's naked assertion that this "third party" "would have provided funding or investment to Catalyst had SI not asserted its patent infringement claims" is the type of threadbare "legal conclusion[] couched as a factual allegation" that is not entitled to deference, *Guirguis*, 346 F. App'x at 776 (quoting *Twombly*, 550 U.S. at 555), and the same type of naked assertions that the Delaware court rejected as giving rise to a plausible claim in *Biomeme, Inc. v. McAnallen*, No. N19C-12-079, 2021 WL 5411094, at *5 (Del. Super. Ct. Nov. 10, 2021).

As in *Biomeme*, Catalyst fails to allege "any facts to indicate the reality" of this purported relationship, as it fails to identify this third party, when it communicated with the party, how much this funding or investment would have been, reasons why Catalyst was likely to secure such funding or investment from this third party, that Catalyst was even interested in securing funding or investment from this third party, or any other factual support, apart from reciting the legal conclusion itself. *Id.* Catalyst's allegations are insufficient to state a plausible claim.

Second, Catalyst fails to plausibly allege that Shoulder intentionally interfered with Catalyst's purported business relationship, omitting a fundamental requirement—Shoulder's "knowledge of the relationship or expectancy." *Soterion Corp. v. Soteria Mezzanine Corp.*, No. 6158-VCN, 2012 WL 5378251, at *14 (Del. Ch. Oct. 31, 2012) (citation omitted); *see also Rwanda Social Sec. Bd. v. LEAF Pharmas., LLC*, No. 2022-0987, 2023 WL 8520313, at *4 (Del. Ch. Dec.

8, 2023) (To plead "intentional interference," a plaintiff "must allege that the defendant had knowledge of the opportunity."). While Catalyst generally alleges that "SI knew that Catalyst was involved in" efforts to secure financing, (D.I. 59 at 11, ¶ 32), it fails to allege that Shoulder knew of *this particular* "third party" funder or investor. Without pleading Shoulder's knowledge of this relationship, Catalyst's claim fails as there can be no intentional interference. *Rwanda*, 2023 WL 8520313, at *5 (finding defendant's alleged notice to plaintiff of its plans "to market [the company] to potential acquirers" was insufficient to establish plaintiff "actually *knew*" of the particular acquisition proposal defendant contended formed its reasonably probable business relationship).

Third, Catalyst fails to plausibly allege that *Shoulder* interfered with Catalyst's purported business relationship, instead acknowledging that it was *Catalyst* who "inform[ed] its potential investors and financiers" of the lawsuit. D.I. 59 at 16, ¶ 58. While Catalyst generically alleges that Shoulder "repeated objectively baseless allegations from the complaint and/or the amended complaint . . . [to] medical professionals, customers of the parties, and/or potential customers of the parties," it notably omits *any* mention that Shoulder made such statements to the alleged "third party" that would have provided Catalyst funding or investment. D.I. 59 at 15, ¶ 49. Devoid of any allegations that Shoulder took any action to contact, communicate, or otherwise direct conduct towards the particular unidentified "third party," Catalyst's tortious interference claim fails. *See Rwanda*, 2023 WL 8520313, at *5; *cf. MMS Trading Co. Pty. v. Hutton Toys, LLC*, No. 20-1360, 2021 WL 1193947, at *14 (E.D.N.Y. Mar. 29, 2021) (under similar legal elements, noting that "a defendant must have engaged in 'conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship'" (citation omitted)).

Finally, because "the probability of the business opportunity must be assessed at the time of the alleged interference," Catalyst's allegations fail to give rise to an inference that any

purported wrongful conduct of Shoulder was the proximate cause of the unidentified "third party" not providing funding or investment to Catalyst. *Malpiede*, 780 A.2d at 1099. Catalyst alleges Shoulder's wrongful conduct is "fil[ing] its *amended* complaint in bad faith." D.I. 59 at 14, ¶ 48 (emphasis added). But Catalyst only alleges that the "third party" did not provide "funding or investment to Catalyst" based on Shoulder's assertion of patent infringement claims (*id.* at 17, ¶ 59); nothing about Catalyst's allegations give rise to an inference that the "third party" did not provide funding based on Shoulder's *addition* of the '254 Patent in its amended complaint.[1]

**2. Conclusory Allegations of the Loss of the Nebulous and Generalized Class of "Customers" Also Does Not Give Rise to a Plausible Claim**

Catalyst's remaining allegation that Shoulder's conduct caused (1) "customers to abandon Catalyst"; (2) "customer to delay in working with including [sic] Catalyst"; and/or (3) "Catalyst to inform its potential investors and financiers" (D.I. 59 at 16, ¶ 58) also fails to plausibly allege a tortious interference claim. Catalyst's allegations are the same type of vague allegations of a nebulous class repeatedly rejected by Delaware courts as insufficient to state a plausible claim. *Kimbleton v. White*, No. 12-974-GMS, 2014 WL 4386760, at *8 (D. Del. Sept. 4, 2014) (rejecting assertion of interference based on "all 'prospective home buyers'" for failure to identify any "specific" relationships); *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 123 (Del. Ch. 2017) (rejecting assertion of alleged loss of "customers, lenders, investors, and prospective investors" for failure to identify any specific customer relationships harmed); *cf. Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, 546 F. Supp. 3d 204, 216 (W.D.N.Y. 2021) (under similar legal elements, finding defendant's tortious interference claim "insufficiently specific" because it failed to "identify the potential customers at issue" (internal quotes and citation omitted)). In addition,

---

[1] Indeed, the lack of any injury is further evidenced by Catalyst's September 10, 2024 public announcement that it "close[d] $20 million in equity and venture debt financing." Ex. 1 at Ex. B.

Catalyst's allegations regarding the loss of "customers" and "potential investors and financiers" are devoid of any factual support, providing no basis for inferring that these were anything more than a *mere hope* of a potential relationship, rather than something reasonably probable. *See CrewFacilities.com, LLC v. HotelEngine, Inc.*, No. 20-1637-RGA, 2021 WL 2649758, at *6 (D. Del. June 28, 2021) (finding defendant's tortious interference claim deficient because its allegations were "conclusory" and "devoid of any alleged future business prospects").

### D. Catalyst's Eighth Claim for Abuse of Process Should Be Dismissed as Factually Unsupported and Insufficiently Plead

Even if the Court finds that Catalyst's Eighth Claim for Relief, alleging abuse of process (D.I. 59 at 23, ¶¶ 106-109), is not barred under the *Noerr-Pennington* doctrine, the counterclaim should still be dismissed as legally and factually unsupported. To plead an abuse of process claim, Catalyst must set forth "(1) an ulterior motive; and (2) a willful act in the use of the legal process that is not proper in the regular conduct of the proceedings, i.e., the current litigation." *Rwanda*, 2023 WL 8520313, at *3 (internal quotations and citation omitted). To its detriment, Catalyst's allegations focus almost exclusively on Shoulder's conduct *prior* to initiating this litigation in February 2024 (D.I. 59 at 7-9, ¶¶ 16-27), but abuse of process claims are "concerned with 'perversion of the process after it has been issued,'" not the conduct in the initiation of that process. *Pfeiffer v. State Farm Mut. Auto. Ins. Co.*, No. N10A-12-006, 2011 WL 7062498, at *5 (Del. Super. Ct. Dec. 20, 2011) (citation omitted). Thus, Shoulder's pre-litigation conduct cannot give rise to an actionable claim. Catalyst's conclusory allegations regarding Shoulder's post-filing conduct fare no better.

#### 1. Shoulder's Alleged Communications with Third Parties Do Not Support an Abuse of Process Claim

Catalyst alleges only one post-filing act by Shoulder that was allegedly "not in furtherance of the litigation" or beyond the regular conduct of proceedings, alleging "[o]n information and

belief" that Shoulder "has repeated objectively baseless allegations from the complaint and/or the amended complaint . . . [to] medical professionals, customers of the parties, and/or potential customers of the parties" and that "[s]uch statements include, on information and belief, that Catalyst infringed SI's patents and . . . will be forced to discontinue its R1 Reverse Shoulder System." D.I. 59 at 15, ¶¶ 49-50. But, such an allegation fails to give rise to an actionable abuse of process claim as it is conclusory, devoid of any factual support, and not entitled to be taken as true on a motion to dismiss. *Iqbal*, 556 U.S. at 678-79. Catalyst's deficient allegations are the same sort of unsupported allegations that the Delaware court in *Rwanda* rejected in finding that the defendant failed to set forth an actionable abuse of process counterclaim. 2023 WL 8520313.

As in *Rwanda*, Catalyst's allegations fail to identify who at Shoulder made such statements, when, and to what customers or potential customers. Nor does Catalyst allege how those statements went beyond a typical patent case to obtain some "collateral advantage, not properly involved in the proceeding itself," (*id.* at *3-4) baldly asserting that any statements made were "not in furtherance of or incidental to the litigation" (D.I. 59 at 15, ¶ 49). Further, a finding of Catalyst's infringement and an enjoinment of sales of the R1 Reverse Shoulder System are both potential outcomes of this suit, and a patentee "is entitled to communicate facts about its suit in the marketplace, including accusations of infringement, consistent with its allegations in suit." *Wilco Ag. v. Packaging Techs. & Inspection LLC*, 615 F. Supp. 2d 320, 325 (D. Del. 2009); *cf. Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897-98 (Fed. Cir. 1998) ("Communication of accurate information about patent rights . . . does not support a finding of bad faith.").

**2. Shoulder's Maintenance of Suit Following Catalyst's PGR Petition Does Not Support an Abuse of Process Claim**

Shoulder's decision to continue this lawsuit in view of Catalyst's PGR petition also cannot form the basis of Catalyst's abuse of process claim, because mere "*maintenance* of a lawsuit . . .

is not a proper basis for an abuse of process action." *Korotki v. Hiller & Arban, LLC*, No. N15C-07-164, 2016 WL 3637382, at *3 (Del. Super. Ct. July 1, 2016). Thus, Catalyst's reliance on its allegation that Shoulder has known since "no later than July 3, 2024, that the claims of the '561 Patent are invalid,"[2] yet "charged forward and filed its amended complaint in bad faith" is misplaced. D.I. 59 at 12-13, ¶¶ 36-48. Further, neither the '561 Patent (the only patent for which Catalyst filed a PGR) nor the '254 Patent have been found unpatentable, or otherwise invalid, by any court or the PTO. *Cf. Braintree Labs.*, 568 F. Supp. 2d at 497 (concluding, on final judgment under Rule 52, that the court "declines to issue a finding that [plaintiff] 'should have known' of its patent's invalidity absent" any finding of invalidity by any court or the USPTO on reexamination). With Shoulder's patents presumed valid, maintaining an infringement suit is conduct well within the proper bounds of its rights.

### 3. Shoulder's May 21, 2024 Letter Served No Improper Purpose, and Does Not Support an Abuse of Process Claim

Catalyst implies that Shoulder's May 21, 2024 letter notifying Catalyst of Shoulder's newly-allowed '254 Patent was somehow improper, as it "threaten[ed] potential entitlement to 'a reasonable royalty for Catalyst's infringement of the Allowed Patent pursuant to 35 U.S.C. § 154(d)." D.I. 59 at 10, ¶¶ 29-30. This is a blatant mischaracterization. Shoulder's letter clearly stated that it would only seek a reasonably royalty "to the extent that the Allowed ['254] Patent publishes prior to its issuance date," (D.I. 59-4) precisely the relief afforded a patent owner under § 154(d). Further, contrary to Catalyst's suggestion that Shoulder's letter was improper for not

[2] Catalyst's assertion that Shoulder "has known at least as early as October 3, 2023" that the claims of the '561 Patent are invalid (D.I. 59 at 12, ¶ 41) makes no sense, as this was the day the PTO issued the '561 Patent. An issued patent is presumed valid (35 U.S.C. § 282), so any assertion that Shoulder knew its patent was invalid on that date contradicts the letter of the law. This is particularly true when the PTO issued the '561 Patent over Catalyst's identified prior art.

including a copy of the published patent application, (D.I. 59 at 10, ¶ 30), there was no such need and Shoulder's letter acknowledged that the application had yet to publish (D.I. 59-4). Far from an attempt to mislead Catalyst or abuse the process, the letter clearly identified its purpose—a legitimate purpose in the regular conduct of proceedings—to provide Catalyst notice of Shoulder's newly-allowed (but not yet published) application and its intent to add the later-issued patent to the litigation. D.I. 59-4 ("We write to provide actual notice . . . of Shoulder Innovations, Inc.'s ("Shoulder") recently allowed U.S. Patent Application No. 18/605,361 ("'361 Application")"; *id.* ("Upon the *issuance* of the Allowed Patent, Shoulder will seek leave to amend its complaint to add a claim of infringement of the Allowed Patent by the R1 System." (emphasis added)). Nothing is improper about providing a defendant prompt notice about a forthcoming patent the plaintiff intends to add to a litigation. And contrary to Catalyst's assertion that Shoulder sent this letter to "disrupt[] Catalyst's fundraising efforts and spook[] potential investors, doctors, and others in the small community," (D.I. 59 at 11, ¶ 33), Catalyst pleads no facts supporting any inference that *Shoulder* disclosed this letter to anyone apart from Catalyst's counsel of record.

Regardless, Shoulder's May 2024 letter regarding the '254 Patent cannot form the basis of an abuse of process claim because while the letter was sent after initiation of the litigation, it was sent *before* the initiation of the '254 Patent into the process, and abuse of process claims are *not* concerned with conduct in the initiation of that process. *Pfeiffer*, 2011 WL 7062498, at *5.

## VII. ALTERNATIVELY, CATALYST'S COUNTERCLAIMS 6-8 SHOULD BE BIFURCATED AND STAYED

Should the Court not dismiss Catalyst's counterclaims 6-8, any surviving claims should be bifurcated and stayed (including discovery),[3] because such claims will "become much simpler to

[3] A court may stay discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1)(B). "It is implicit in [Rule]

resolve once the patent infringement issue is settled." *DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*, No. 23-675-WCB, 2024 WL 639991, at *5-6 (D. Del. Feb. 15, 2024) (collecting cases staying sham-litigation-based claims in patent cases); *see also In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986) (bifurcation is "standard practice"). If Shoulder's infringement claims prevail, they could not have been "objectively baseless" and Catalyst's counterclaims fail as a matter of law. *See DSM IP Assets*, 2024 WL 639991 at *5 (noting that a finding of infringement would "dispose of any claim that the infringement theory was baseless"); *see also Pro. Real Estate Invs.*, 508 U.S. at 60 n.5 ("A winning lawsuit is . . . not a sham."). And even if Shoulder's infringement claims ultimately do not prevail, such findings would provide useful information for assessing Catalyst's counterclaims, but only *after* the threshold infringement issues are resolved.

Staying any remaining counterclaims also streamlines case management and avoids burdening the parties (and third parties) with needless, "substantial and expensive discovery . . . which may prove to be largely or entirely unnecessary after resolution of the patent issues." *Orthophoenix, LLC v. Dfine, Inc.*, No. 13-1003-LPS, 2015 WL 1938702, at *1 (D. Del. Apr. 28, 2015); *DSM IP Assets*, 2024 WL 639991, at *6; *Eagle Pharms., Inc. v. Eli Lilly Co.*, No. 18-1121-MSG, 2018 WL 6201704, at *3 (D. Del. Nov. 27, 2018).

## VIII. CONCLUSION

For the foregoing reasons, Catalyst's counterclaims 6-8 should be dismissed. Alternatively, they should be bifurcated and stayed pending resolution of the infringement issues.

---

42(b) that a trial judge who grants bifurcation has the power to limit discovery to issues relevant to the first trial." *Akzona Inc. v. E.I. Du Pont de Nemours & Co.*, 607 F. Supp. 227, 232 (D. Del. 1984). Courts have broad discretion to stay discovery upon a showing of good cause. *See AccuSoft Corp. v. Palo*, 237 F.3d 31, 58 (Fed. Cir. 2001).

*/s/ Karen E. Keller*
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiff*
*Shoulder Innovations, Inc.*

OF COUNSEL:
Jon W. Gurka
CROWELL & MORING LLP
3 Park Plaza, Suite 20
Irvine, CA 92614
(949) 798-1331

Andrew McElligott
Ryan Fitzgerald
CROWELL & MORING LLP
455 N. Cityfront Plaza Drive
Chicago, IL 60611
(312) 321-4200

Dated: September 12, 2024